J-S54009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BERNARD SALMOND, | |
| Appellant | No. 3151 EDA 2014 |

Appeal from the Judgment of Sentence June 20, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009618-2012

BEFORE:  BOWES, PANELLA, AND FITZGERALD, *JJ.

MEMORANDUM BY BOWES, J.:               **FILED NOVEMBER 16, 2015**

Bernard Salmond appeals from the judgment of sentence of eighteen to thirty-six years incarceration that the trial court imposed after a jury convicted him of third-degree murder and conspiracy to commit murder.  We affirm.

The certified record supports the trial court's summary of facts.

> On April 10, 2008, Kenneth Wiggins and [Appellant's] brother, Quentin Salmond [("Quentin")], were betting on a game of dice.  N.T. 3/18/14 at 220-221.  During the betting, there was an altercation over a bet which prompted Wiggins to take money from Quentin. N.T. 3/18/14 at 221-222, 251; 3/19/14 at 141.

> Two days later, on April 12, 2008, at approximately 12:30 p.m., Wiggins went into the Skyline Restaurant, which he was known to frequent.  N.T. 3/18/14 at 161, 238.  As Wiggins entered the restaurant, a car driven by [Appellant], with Quentin and Jamil Banks as passengers, pulled up and parked on Woodlawn Road, near the intersection with Chew Road. N.T.

_____
* Former Justice specially assigned to the Superior Court.

3/18/14 at 95-96, 162. [Appellant] was driving a blue Lincoln Continental, with PA license plate GXW5380. N.T. 3/18/14 at 106. Quentin, dressed in an Islamic khimar[1] and sunglasses to hide his identity, and Banks exited the vehicle and walked up the street towards the Skyline Restaurant. N.T. 3/18/14 at 97, 162, 168, 259; 3/19/14 at 182. [Appellant] remained in the car, parked, with the engine running. N.T. 3/18/14 at 99-100. Joan Hill witnessed [Appellant] park the car and also noticed Quentin, who appeared to Hill to be a male wearing female headwear. Believing that a robbery was about to happen, Hill called 911. N.T. 3/18/14 at 100.

Quentin remained outside the restaurant while Banks went inside and purchased a soda, presumably scouting for Wiggins. N.T. 3/18/14 at 1620163. Banks then exited the restaurant and returned to where Quentin was standing outside. N.T. 3/18/14 at 163-164. Shortly thereafter, Wiggins left the restaurant and began walking up the street when he was confronted by Quentin and Banks. N.T. 3/18/14 at 130, 164; 3/19/14 at 182-183. After being shot, Wiggins attempted to flee the scene but collapsed on the far side of the street. N.T. 3/18/14 at 164, 255. Quentin and Banks ran back to the car in which [Appellant] was waiting, and the three fled the scene. N.T. 3/19/14 at 183. Medical personnel arrived on scene and transported Wiggins to the hospital, where he was later pronounced dead. N.T. 3/18/14 at 129, 257-258.

Police recovered two fired cartridge casings and a Mountain Dew soda bottle from the scene of the shooting. N.T. 3/18/14 at 81, 166. Police also recovered the surveillance cameras from the Skyline Restaurant, which had recorded the entire encounter. N.T. 3/18/14 at 155-156. A .32 caliber bullet was recovered from Wiggins' body. N.T. 3/19/14 at 12-13. As the casings found at the scene were not .32 caliber, police determined that two guns had been fired outside of the restaurant, one .22 caliber semi-automatic and one .32 caliber revolver. N.T. 3/19/14 at 12-14, 18-19.

_____

[1] A khimar is a two-piece garment consisting of a long cape covering the entire body and a head covering that also can be pulled up to hide the mouth.

[Appellant] had obtained the car that he used in the murder from Charles Hayward, who sold the vehicle to [Appellant] but never transferred the title. N.T. 3/19/14 at 26-28, 42, 183-84. Because [Appellant] feared that police would trace the car to [him through] Hayward, . . . [Appellant] instructed two associates, Shawn Pina and Tyree Fisher, to burn the vehicle. N.T. 3/19/14 at 184. The vehicle was found on April 14, 2008, two days after the shooting, when fire department personnel responded to a report of a vehicle . . . fire near Chew Street and 10th Street in Philadelphia. N.T. 3/20/14 at 21-22.

Trial Court Opinion, 1/22/15, at 2-4 (footnotes omitted).

On March 21, 2014, a jury convicted Appellant of third-degree murder and criminal conspiracy to commit murder. The trial court imposed two concurrent terms of eighteen to thirty-six years imprisonment. Appellant filed a post-sentence motion that challenged the weight of the evidence and the discretionary aspects of his sentence. This timely appeal followed the denial of post-trial motions. Appellant's ensuing Rule 1925(b) statement included, *inter alia*, the foregoing challenges to the weight of the evidence and the discretionary aspects of sentencing.

Appellant presents the following questions for our review:

I. Is the appellant entitled to an arrest of judgment with regard to his convictions for murder of the third degree and criminal conspiracy since the evidence is insufficient to sustain the verdict as the Commonwealth failed to prove the appellant's guilt of these crimes beyond a reasonable doubt?

II. Is the appellant entitled to a new trial with regard to his convictions for murder of the third degree and criminal conspiracy since the verdicts of guilt are against the weight of the evidence?

III. Is the appellant entitled to a new trial as a result of the trial court's denial of a motion for a mistrial based upon juror misconduct?

IV. Is the appellant entitled to be resentenced since the trial court's aggregate sentence of 18 to 36 years for murder [in] the third degree and criminal conspiracy is contrary to the appellant's character, history and condition and is therefore, excessive and unreasonable?

Appellant's brief at 5.

Appellant's first issue challenges the sufficiency of the evidence that the Commonwealth adduced at trial. Generally, "[o]ur standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." **Commonwealth v. Love**, 896 A.2d 1276, 1283 (Pa.Super. 2006). The Commonwealth may sustain its burden of proof based entirely on circumstantial evidence. **Commonwealth v. Laird**, 988 A.2d 618, 624 (Pa. 2010). "[A]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*).

The Pennsylvania Crimes Code defines the varying degrees of murder as follows:

(a) Murder of the first degree.--A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree.--A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) Murder of the third degree.--All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S. § 2502.

As developed by case law, the elements of third-degree murder are (1) a killing (2) with legal malice (3) but without the specific intent to kill required in first-degree murder. *Commonwealth v. Thompson*, 106 A.3d 742, 657 (Pa.Super. 2014). Additionally,

Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured[.] Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

*Id*. (quoting *Commonwealth v. Dunphy*, 20 A.3d 1215, 1219 (Pa.Super. 2011)).

As it relates to criminal conspiracy conviction,

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

. . . .

**(e)** Overt act.--No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903 (a) and (c).  Thus, the elements of criminal conspiracy are (1) an agreement to commit or aid others in committing a crime; (2) shared criminal intent; and (3) an overt act in furtherance of the agreement.  *See Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa.Super. 2005).

As a practical matter, conspiracies are commonly established through circumstantial evidence.  We previously stated, "Proof of a conspiracy is almost always extracted from circumstantial evidence.  The Commonwealth may present a 'web of evidence' linking the defendant to the conspiracy beyond a reasonable doubt.  The evidence must, however, rise above mere suspicion or possibility of guilty collusion." *Commonwealth v. Vargas*, 108 A.3d 858, 873 (Pa.Super 2014) (*en banc*) (quoting *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super. 2000)).  Additionally, "The conduct of the parties and the circumstances surrounding such conduct may

create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Bricker***, ***supra*** at 1017.

Herein, Appellant asserts generally that the Commonwealth failed to adduce sufficient evidence to establish his identity as the driver of the vehicle that transported the shooters to Chew Avenue or his participation in the incident that resulted in the victim's death. Appellant's brief at 21. As it relates to the murder conviction, he contends that the evidence does not demonstrate that he "engaged in any conduct that exhibited his intent to kill the victim or cause the victim serious bodily injury that resulted in death." ***Id***. Finally, in reference to the conspiracy conviction, he maintains that the evidence does not sustain the finding that he entered into an agreement to kill the victim. ***Id***. We address these components *seriatim*.

During the jury trial, the Commonwealth presented the testimony of Joan Hill, a local business owner who observed Appellant and his codefendants stop in a blue Lincoln Continental with license tag No. GXW5380 in front of her office at the intersection of Woodlawn Road and Chew Avenue. N.T., 3/18/14, at 96, 106. Two males exited the vehicle. ***Id***. 95-96. One of the males was dressed like a woman in an Islamic khimar and sunglasses. ***Id***. at 96, 97. The driver remained in the vehicle with its engine idling. ***Id***. at 99. As one of the men's attire and his obvious attempt to conceal his identity alarmed her, she called 911 to report the suspicious activity that she observed. ***Id***. at 100, 102. Several minutes later, Ms. Hill

heard gunshots discharged on Chew Avenue and called 911 a second time. *Id*. at 104, 105. Following the murder, she spoke with police at her office and described the vehicle and the men that she observed earlier that day. *Id*. at 107.

The exterior surveillance video recovered from the Skyline Restaurant confirms much of Ms. Hill's testimony. *See* Commonwealth's Exhibit C-64. The video depicted the blue Lincoln traveling down Chew Avenue and turning left onto Woodlawn Road out of the camera's perspective. *Id*. Ninety seconds after the car traveled out of frame, Appellant's two codefendants, one of whom wore a khimar, re-emerged into frame. *Id*. The pair walked toward the Skyline Restaurant, and stepped into a vestibule near the entrance of the restaurant. *Id*. A different segment of video recorded several minutes later showed the victim exiting the restaurant at approximately 11:39 a.m. and walking down Chew Avenue toward Woodlawn Road. *Id*. After the victim passed the vestibule, the assailants emerged individually, followed the victim a short distance, and shot him. *Id*. Both assailants fled toward Woodlawn Road and disappeared around the corner where the Lincoln had passed several minutes earlier. *Id*.

The Commonwealth also presented the testimony of Charles Hayward, the registered owner of the blue Lincoln Continental. Mr. Hayward stated that he grew up with Appellant, whom he identified in the courtroom, in the Germantown section of Philadelphia and had remained friends with him.

N.T., 3/19/14, at 24-25. Mr. Hayward explained that he sold the blue Lincoln to Appellant during February 2008, but he neglected to transfer the title or registration into Appellant's name. *Id*. 26-28, 29. Appellant stipulated that the vehicle's tag number was GXW5380. *Id*. at 28. The Commonwealth presented Mr. Hayward with the verbatim signed statement that he provided to police during their investigation of the murder. *Id* at. 33. Exhibit C-39. Although Mr. Hayward's trial testimony challenged the accuracy of certain portions of the prior verbatim statement, the Commonwealth used the statement as evidence that Quentin had informed Mr. Hayward of an incident where he had been robbed at gun point while gambling with the victim, Kenny Wiggins, on Chew Avenue. N.T., 3/19/14, at 45-48. Mr. Hayward further explained that it was Appellant's inquiry about the gambling incident that led to the revelation that the victim had been involved in the robbery. *Id*. at 48. Mr. Hayward stated, "[Appellant] asked him, Quentin[,] who was up there and he, Quentin, said[,] Kenny and them." *Id*. at 48. Following the interview, Mr. Hayward identified Appellant and Quentin from photographs supplied by police and he identified Quentin as one of the assailants in a still frame taken from surveillance video. *Id*. at 57-58.

Next, the Commonwealth presented the testimony and the signed verbatim statement Robert Bluefort gave to police. Appellant confided to Bluefort his role in the murder, and Bluefort assisted Appellant in selecting a

location to set the Lincoln Continental ablaze to avoid its discovery by police. N.T., 3/18/14, at 286, 290. Mr. Bluefort's verified statement, which Bluefort challenged at trial, outlined Appellant's confession to his involvement in the murder committed by Quentin and Banks. *Id*. at 286. Appellant confided that, after the trio observed the victim near the Skyline Restaurant, he pulled the Lincoln over so the two assailants could exit. Quentin and Banks waited for the victim to remerge from the restaurant, and, following a brief exchange, Quentin shot the victim in the stomach. *Id*. at 286-287. The assailants ran back to the Lincoln, and Appellant sped away. *Id*. at 287.

As it relates to Appellant's attempt to destroy the automobile, Mr. Bluefort's statement indicated that "[Appellant] was paranoid about the police finding the car[,] so he told . . . Tyree Fisher and [Shawn Pina] to burn it." *Id*. at 290. Bluefort continued that he helped Appellant find a suitable location to set the car ablaze. *Id*. Thereafter, Appellant gave the key to Fischer and one or two days after the murder, they received confirmation that the car had been set on fire. *Id*. For the next two months, Appellant remained at Bluefort's home to "[lay] low . . . from police and [because] he was worried about retaliation." *Id*. at 291.

The preceding evidence is sufficient to prove beyond a reasonable doubt that Appellant committed third-degree murder and criminal conspiracy. The surveillance video captured an image of Appellant's blue Lincoln Continental driving past the Skyline Restaurant and turning abruptly

onto Woodlawn Road immediately before the two assailants emerged from that location and prepared to ambush the victim. Ms. Hill identified Appellant's blue Lincoln Continental as the car that the two gunmen alighted from on Woodlawn Road immediately prior to the murder, and she recorded the vehicle's license number.

Two of Appellant's acquaintances, Hayward and Bluefort, informed police that Appellant implicated himself in the murder. Hayward explained that the murder was in retaliation for a prior armed robbery committed against Quentin. Bluefort detailed the particulars of his role in the murder and the disposal of the vehicle, and discussed Appellant's attempt to hide from police and potential retribution from the victim's associates. Thus, we reject Appellant's claim that the Commonwealth failed to establish his identity as the person driving the blue Lincoln Continental when the murder was committed.

Likewise, the evidence sustains the requisite agreement to support criminal conspiracy and the intent element of third-degree murder. Initially, we observe that the foregoing evidence adduced at the jury trial demonstrates that Appellant conspired with Quentin and Banks to shoot the victim as retribution for his role in an armed robbery against Quentin two days prior to the murder. The entire episode was accomplished with Appellant's aid and assistance. Appellant drove the two assailants to the murder scene in his automobile, and waited with an idling engine while

Quentin and Banks ambushed the victim by shooting him in the chest at close range and returned to the waiting vehicle. Then he drove the trio away. Thereafter, he engaged in a futile attempt to destroy his car and remove it from any connection to the crime. Hence, the evidence was sufficient for the jury to infer that Appellant and his co-conspirators entered an agreement to kill the victim. ***Bricker***, ***supra*** at 1017 (conduct of parties and circumstances surrounding conduct may create web of evidence linking accused to alleged conspiracy beyond reasonable doubt).

Having established the conspiracy to shoot the victim in retaliation for his crimes against Quentin, we next conclude that the jury could infer the malice element of third-degree murder from the totality of the circumstances and the assailants' use of a deadly weapon on the victim's chest, a vital part of the victim's body. ***See Vargas***, ***supra*** (quoting ***Commonwealth v. Lambert***, 795 A.2d 1010, 1016 (Pa.Super. 2002) (*en banc*) ("Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.")); ***Commonwealth v. Ventura***, 975 A.2d 1128 (Pa.Super. 2009) (malice may be inferred from use of deadly weapon on vital part of victim's body). As the evidence contained in the certified

record is sufficient to sustain the jury verdicts for criminal conspiracy and third-degree murder, no relief is due.

Appellant's next issue challenges the weight of the evidence. The trial court's belief that the verdict is not against to weight of the evidence and that a new trial is not warranted in the interest of justice is one of the least assailable reasons for a trial court to deny a new trial. ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000). It is well established that appellate review of a weight claim is limited to determining whether the trial court abused its discretion rather than review the weight claim itself. ***Commonwealth v. Best***, 120 A.3d 329 (Pa.Super. 2015). A new trial should only be awarded if the jury's verdict is so contrary to the evidence as to shock one's sense of justice. ***Thompson v. City of Philadelphia***, 493 A.2d 669, 672 (Pa. 1985).

Appellant argues that the testimony of Robert Bluefort, whom he styles as the sole incriminating witness, "was so unreliable, incredible, conjectural and contradictory that no probability of fact can reasonably be drawn from his testimony." Appellant's brief at 34. He highlights Mr. Bluefort's criminal history involving dishonesty as well as the facts that the witness might have been involved in the case, was motivated to provide false information, and avoided prosecution as an accessory in this case or other crimes that he allegedly committed. He also challenges the witness's purported inability to remember key facts that were essential to his cross-

examination. In sum, Appellant opined, "[r]eliance on Bluefort's testimony renders the jury's verdict speculative and conjectural." *Id*. at 35.

In rejecting Appellant's weight claim, the trial court outlined the relevant evidence that the Commonwealth adduced during the jury trial and determined that "[t]he evidence . . . plainly established that [Appellant] committed the crimes for which he was convicted." Trial Court Opinion, 1/22/15, at 9. Specifically, it found that Bluefort's statements were substantially corroborated by testimony presented by Ms. Hill and Mr. Hayward, video surveillance, and the physical evidence surrounding the shooting and the location of the burned vehicle. Thus, upon review of the trial court's reasoning, we find no basis to disturb the court's finding that the verdict was not contrary to the weight of the evidence. Stated plainly, the jury was the ultimate arbiter of fact and, notwithstanding the potential flaws in Bluefort's credibility, the jury's verdict was not so contrary to the evidence as to shock one's sense of justice. Appellant's claim fails.

Next, we confront Appellant's argument that the trial court erred in failing to grant his motion for mistrial based upon alleged juror misconduct. We review the decision to grant or deny a mistrial for an abuse of discretion. *Commonwealth v. Begley*, 780 A.2d 605, 624 (Pa. 2001). As our Supreme Court explained, "The remedy of a mistrial is an extreme one that is required only when an incident is of such a nature that its unavoidable effect is to deprive the defendant of a fair and impartial trial by preventing

- 14 -

the jury from weighing and rendering a true verdict." *Id*. at 624. Additionally, "a mistrial is not necessary if a court's cautionary instructions adequately cure any prejudice." *Id*. at 624-625.

The following facts are relevant. During a break on the second day of trial, Juror Two informed the trial court that he believed that he had observed a spectator, later identified as Appellant's father, make a throat-cutting gesture during Hayward's testimony. He stated, "one of the people present moved [his] right index finger across his neck." N.T., 3/19/14, at 81. The juror could not discern to whom the gesture had been directed. The trial court conducted an extensive colloquy of each juror individually, advised each that the incident had nothing to do with the trial, and asked whether he or she could disregard it. All of the jurors except one had heard about the incident from Juror Two, but none of the other jurors witnessed the gesture. When asked whether they could disregard the incident, only Juror Seven said that it would be difficult to disregard. Every other juror testified unequivocally that he or she would have no problem disregarding it. The trial court excused Juror Two and Juror Seven and replaced them with alternates. Satisfied that the remaining jurors would abide by his statement that the incident had nothing to do with the case and confident that they could render a fair decision, the trial court denied Appellant's motion for a mistrial. *Id*. at 123.

Appellant asserts that he is entitled to a new trial because Juror Two's conduct in discussing with the other remaining jurors his observation of the throat-slashing incident was prejudicial. We disagree. The reality is that none of the empaneled jurors observed the gesture and all of the remaining jurors avowed that they would not let the incident affect their ability to be fair to both sides. The trial court removed the juror who observed the gesture and the single juror who indicated that the incident could affect his view of the case. The trial court conducted *voir dire* with the jurors individually to insure their continuing impartiality and impart to them that the information that he or she heard regarding the alleged gesture had nothing whatsoever to do with the trial. As the jury is presumed to have followed the trial court's instruction to disregard the incident, which each of the empaneled jurors personally avowed to do, we cannot find that the trial court abused its discretion in denying Appellant's motion for a mistrial. ***See Commonwealth v. Miller***, 819 A.2d 504, 513 (Pa. 2002) ("The law presumes that the jury will follow the instructions of the court"); and ***Begley***, ***supra*** at 624-25 ("a mistrial is not necessary if a court's cautionary instructions adequately cure any prejudice."). As the trial court's curative actions removed any possibility of prejudice, a mistrial was not warranted.

Next, we address Appellant's argument challenging the discretionary aspects of the judgment of sentence and for the following reasons, we find that no relief is due. Before we reach the merits of a discretionary

- 16 -

sentencing issue, we must ascertain whether (1) a timely appeal was filed from the judgment of sentence; (2) the issue was preserved during the trial court proceedings; (3) the appellant complied with Pa.R.A.P. 2119(f); and (4) the Rule 2119(f) statement reveals a substantial question that the sentence was not appropriate under the sentencing code. ***Commonwealth v. Lebarre***, 961 A.2d 176, 178 (Pa.Super. 2008).

Herein, Appellant's notice of appeal was filed timely. Likewise, Appellant raised his sentencing issue in a post-sentence motion and leveled the challenge in his Rule 1925(b) statement. Additionally, Appellant included in his brief a concise statement of reasons for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant's sentencing issue raises a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1266 (Pa.Super. 2014) (*en banc*) (quoting ***Commonwealth v. Glass***, 50 A.3d 720, 727 (Pa.Super. 2012)).

Appellant asserts that the judgment of sentence was manifestly excessive and unreasonable. In ***Commonwealth v. Treadway***, 104 A.3d 597, 599 (Pa.Super. 2014) (citation omitted), we reiterated, "Generally, Pennsylvania law affords the sentencing court discretion to impose its

sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." We further explained, "[a]ny challenge to the exercise of this discretion ordinarily does not raise a substantial question." *Id*. (citations omitted).

Instantly, Appellant's position offers nothing more than the assertion that, "A review of the record in this case clearly shows that the trial court's aggregate sentence of 18 to 36 years . . . [is] manifestly excessive [in that it does] not [reflect] a proper consideration of the history, character and condition of the [A]ppellant." Appellant's brief at 50. He bolsters this position with the added assertion, "There is no evidence in this record with regard to Appellant's background that would warrant 18 to 36 years sentences." *Id*. at 51.

It is well settled that bald allegations of excessiveness do not raise a substantial question. *See Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa.Super. 2013) (*en banc*) (OISA), *aff'd* 2015 WL 6498828 (Pa. 2015) ("generic claim that a sentence is excessive does not raise a substantial question"). Moreover, we have consistently held that a trial court's failure to give greater weight to various purported mitigating factors does not present a substantial question. *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa.Super. 2013) ("inadequate consideration of mitigating factors does not raise a substantial question"). We stress that Appellant does not allege that the trial court failed to consider the noted factors. Indeed, when combined

with a claim of manifest excessiveness, that assertion, as opposed to a challenge to the weight the court assessed among the factors it considered, may raise a substantial question. *See Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014) ("an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question."). Thus, we find Appellant's bare contention that the sentence was manifestly excessive because the trial court should have **weighed certain factors more heavily**, does not raise a substantial question that the sentence was not appropriate under the sentencing code. Accordingly, we do not address the merits of Appellant's argument.

Moreover, even to the extent that Appellant's bare assertion could be deemed to have arguably raised a substantial question, we would reject it. The trial court fashioned the judgment of sentence in accordance with the sentencing guidelines. Applying Appellant's prior record and offense gravity scores to the basic sentencing matrix, the court accurately determined that the standard range for minimum terms of confinement for each offense was between 120 months (ten years) and the statutory limit (forty years). N.T., 6/20/14, at 9. Therefore, the trial court's concurrently imposed sentences of eighteen to thirty-six years incarceration were within the standard range of the sentencing guidelines.

In addition to imposing standard range sentences, the trial court fashioned the sentences with the benefit of the Presentence Investigation report ("PSI"). *Id*. at 4. This Court has previously held that, absent more, the imposition of a standard range sentence in combination with the existence of a PSI report cannot be considered excessive or unreasonable. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 546 (Pa.Super. 1995); ***see also Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa.Super. 2013); ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa.Super. 2010) (same). Herein, Appellant's argument that a reconsideration of his "history, character and condition" would reflect a more appropriate deliberation of the appropriate sentencing factors is insufficient to overcome the presumption of reasonableness created by the combination of the trial court's consideration of the PSI in conjunction with its imposition of a standard-range sentence. ***See*** Appellant's brief at 50. Thus, even if Appellant did raise a substantial question, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015

- 20 -